IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD WESOLOWSKI,**                              Case No. 1:15 CV 568

      Plaintiff,

      v.                              Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                              MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Richard Wesolowski ("Plaintiff") filed a complaint against the Commissioner of Social Security ("Commissioner"), seeking judicial review of the Commissioner's decision to deny supplemental security income ("SSI") pursuant to 42 U.S.C. § 405(g). (Doc. 1). The parties consented to the jurisdiction of the undersigned in accordance with 28 U.S.C. § 636(c) and Local Rule 72.2(b)(1). (Doc. 13). For the following reasons, the Commissioner's decision is affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI in May 2012, alleging disability as of January 1, 2002, due to spine problems, difficulty standing and walking, and post-traumatic stress disorder ("PTSD"). (Tr. 71, 142, 166). He later amended the onset date of disability to May 23, 2012. (Tr. 31-32). The claim was denied initially and on reconsideration. (Tr. 85, 91). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at an administrative hearing in October 2013. (Tr. 27-58). Following the hearing, the administrative law judge ("ALJ") issued an unfavorable decision finding Plaintiff not disabled. (Tr. 8-22). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-7). Plaintiff filed the instant action on March 24, 2015. (Doc. 1).

## FACTUAL BACKGROUND

Personal Background

Plaintiff was born on September 20, 1960, and was 51 years old when he applied for disability benefits. (Tr. 21). He received a general equivalency diploma ("GED") and previously worked as a general laborer and pick-up truck driver, but the ALJ determined none of Plaintiff's work experience qualified as past relevant work. (Tr. 21, 167).

Relevant Physical Medical Evidence[1]

Throughout the record Plaintiff treated with Michael D. Harrington, M.D. In February 2010, Plaintiff had swollen feet and complained of shortness of breath. (Tr. 262). Dr. Harrington urged him to quit smoking and noted the presence of 2+ edema. (Tr. 262-63). As of April 2010, Plaintiff's diagnoses included pain disorder with medical factors, unspecified sleep apnea, edema, opioid dependence (not otherwise specified), and benign hypertension. (Tr. 259). At that time, Plaintiff had 1+ edema, which was then absent the following month. (Tr. 254, 258).

In June 2010, Plaintiff returned for a follow-up appointment and a medication change. (Tr. 249). At that time, his diagnoses included lumbosacral spondylosis, low back pain, nicotine abuse, and carrier of hepatitis C. (Tr. 251). In July 2010, diagnostic radiology revealed an enlarged hyperechoic liver, consistent with fatty infiltration. (Tr. 279). In August 2010, he underwent polysomnography testing, which resulted in a diagnosis of severe obstructive sleep apnea and morbid obesity. (Tr. 333-35).

---

1. Plaintiff challenges only the ALJ's RFC conclusion about his physical limitations. As such, he waives any claims about the determinations of his psychological impairments. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010).

2

Spine x-rays taken in June 2011 revealed advanced degenerative disease of the lumbar and lower thoracic spine, with worsening from a prior examination in 2005. (Tr. 277). Dr. Harrington referred Plaintiff to Jonathan Belding, M.D. (Tr. 307-10).

During his appointment with Dr. Belding, Plaintiff complained of leg weakness and paresthesia, and low back pain. (Tr. 307). Plaintiff reported he had osteomyelitis in 2007 and was treated without surgery. *Id.* He stated his chronic low back pain treatment included physical therapy, injections, and chronic pain medications. *Id.* Dr. Belding noted Plaintiff had no myelopathy or radiculopathy, negative straight leg raise tests, and mid-lumbar pain. (Tr. 307-08). He recommended continued conservative treatment with pain management and rehabilitation. (Tr. 309).

In August 2011, Plaintiff again presented to Dr. Harrington and reported some increased numbness on his lateral thighs and low back. (Tr. 302). Notes from this appointment state "[h]e has not given out on him more". *Id.* Plaintiff asserts this was a typographical error and should instead read "knee has not given out on him more". (Doc. 15, at 5). Dr. Harrington opined Plaintiff's spine condition was worsening and progressing, but noted a MRI was not needed because there was no plan for surgery. (Tr. 303).

A sonographic image of Plaintiff's liver, gall bladder, and pancreas taken in June 2012 revealed hepatomegaly and fatty infiltration of the liver without a discrete hepatic mass and no cholelithiasis. (Tr. 269).

Also in June 2012, the record reveals he was feeling better and was more active, but was still smoking. (Tr. 281). A MRI was still not necessary because Plaintiff did not want to consider surgery as a treatment option. (Tr. 282). He was also not interested in treatment for his hepatitis C. *Id.* Dr. Harrington listed lumbar disc disease as a diagnosis. (Tr. 284).

The same month, a pharmacy became "very concerned" that Plaintiff had been filling a methadone prescription numerous times with different pharmacies and contacted Dr. Harrington's office for direction. (Tr. 398). Dr. Harrington continued the prescription and noted the doses were adjusted due to a "flair in situation in spring", but advised the pharmacy Plaintiff should not be attempting to fill it early. *Id.*

In May 2013, Plaintiff reported that if he stood for too long he felt his back was "vibrating". (Tr. 430). A physical examination yielded unremarkable results. *Id.* Dr. Harrington stated a MRI was appropriate at that time due to Plaintiff's vibratory sensation in his back and additional leg pain with exertion—although there is no indication from the record that this occurred. (Tr. 431).

In June 2013, Plaintiff presented to the emergency room after his knee "gave way" and he fell. (Tr. 449). He stated he had problems with his left knee "popping" and "giving out" for a few months. (Tr. 447). He was, however, able to walk after the fall. *Id.* A physical exam revealed a full range of motion in all extremities, equal 5/5 strength in the bilateral upper and lower extremities, and an intact extensor function of both knees with no ligament laxity. (Tr. 448). He was treated with an ace bandage, and diagnosed with chronic left knee pain and right knee and anterior chest wall abrasion. (Tr. 449). A chest x-ray incidentally revealed chronic obstructive pulmonary disease ("COPD"). (Tr. 445). At that time, Plaintiff's prescription pain medication included Methadone, Percocet, and Klonopin. (Tr. 449).

Dr. Harrington's Medical Source Statement

In September 2013, Dr. Harrington completed a medical source statement about Plaintiff's physical capability. (Tr. 462-63). He opined Plaintiff could occasionally lift or carry ten to fifteen pounds; frequently lift or carry zero to ten pounds; stand or walk for a total of two

4

to four hours in an eight-hour workday—fifteen to thirty minutes without interruption; sit for four to six hours in an eight-hour workday; occasionally climb and reach; and rarely balance, stoop, crouch, kneel, crawl, and push or pull. *Id.* Dr. Harrington also opined Plaintiff required the assistance of a cane, TENS unit, breathing machine, and an additional 60 minute break in an eight-hour workday. (Tr. 463).

State Agency Reviewers

On July 12, 2012, state agency reviewer Diane Manos, M.D., completed a physical residual functional capacity ("RFC") assessment. (Tr. 65-66). Dr. Manos opined Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand, walk, or sit for approximately six hours in an eight-hour workday; frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; and occasionally stoop. *Id.*

On reconsideration of the claim, state agency reviewer, Lynne Torello, M.D., completed a RFC assessment on October 30, 2012. (Tr. 78-79). Dr. Torello opined Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand, walk, or sit for a total of six hours in an eight-hour workday; occasionally climb ramps or stairs, ladders, ropes, and scaffolds; and occasionally stoop, kneel, crouch, or crawl. *Id.*

Hearing Testimony

Plaintiff testified he lived with his common-law wife of 33 years and they were both unemployed. (Tr. 33-34). The couple's family and children supported them financially. (Tr. 37). Together they had five daughters—the youngest at the time was seventeen. (Tr. 34). Plaintiff last worked in 2002 or 2005 as a laborer, but was unable to work since then due to back pain. (Tr. 34-35). He testified to past heroin and cocaine abuse, but stated he last used illegal drugs five years prior. (Tr. 38).

Plaintiff used a cane at the hearing, and testified always using the cane since 2005 due to difficulty balancing and pain and weakness on his left side. (Tr. 39, 43, 45). He stated he had not used his TENS unit in some time because it was not effective. (Tr. 43). He did not wear his back brace daily, but only when he had bad days and was "bedridden" for "[a] couple of days". (Tr. 43-44). Plaintiff estimated he could lift approximately five to eight pounds, and could easily lift a gallon of milk, but had difficulty lifting a bag of groceries due to back, spine, hip, and pelvis pain. (Tr. 41). He stated he could walk two street blocks, but needed to stop three or four times to "re-adjust" his back. (Tr. 42). Plaintiff testified he underwent x-rays and MRIs in 2005, and unsuccessful physical therapy and pain management. (Tr. 45-46). Even though all this treatment was ineffective, there was never a discussion of alternative treatment options. (Tr. 48). He stated he was compliant with his prescription pain medication, but suffered some negative side effects. (Tr. 50).

A VE also testified at the administrative hearing. (Tr. 51). The VE opined a hypothetical person of Plaintiff's age, education, and past work—who could lift or carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours in a workday; sit for six hours in a workday; occasionally climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, or crawl; who could perform simple tasks and ascending with no fast pace and only infrequent changes, and occasionally interact with supervisors, co-workers, or the public, if it was limited in speaking and signaling—could not perform Plaintiff's past work. (Tr. 52-53). The VE opined this individual could, however, perform other unskilled work of light exertion. (Tr. 53). When prompted by Plaintiff's counsel, the VE opined that if this individual required the use of a cane, this work would be precluded. (Tr. 56).

In the second hypothetical, the VE opined the same hypothetical individual as in the original hypothetical, but limited to sedentary work would not be able to perform Plaintiff's past work. (Tr. 55).

Finally, the VE opined that if the hypothetical individual in the first scenario had an additional limitation that he would be absent from work four times a month, he would be precluded from all work. *Id.*

Plaintiff's counsel presented a fourth hypothetical to the VE, similar to the RFC set by Dr. Harrington, and the VE opined the individual would be precluded from all work. (Tr. 57).

ALJ Decision

The ALJ issued an unfavorable notice of decision on October 29, 2013, making the following findings of fact and conclusions of law:

1. Plaintiff had not engaged in substantial gainful activity since May 23, 2012, the application date.
2. Plaintiff had severe impairments of other and unspecified arthropathies (lumbar spondylosis), essential hypertension, affective disorders, and personality disorders.
3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
4. Plaintiff had the RFC to perform less than the full range of light work; specifically, he could lift or carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, or crawl; could perform simple tasks in a setting with no fast pace and only infrequent changes; and he could occasionally interact with supervisors, co-workers, and the public if that interaction was limited to speaking and signaling.
5. Plaintiff had no past relevant work.
6. Plaintiff was born on September 20, 1960, and was 51 years old, which is defined as an individual closely approaching advanced age, on the application date.
7. Plaintiff had at least a high school education and was able to communicate in English.
8. Transferability of job skills was not an issue because Plaintiff did not have past relevant work.

9.  Considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

10. Plaintiff was not under a disability since May 23, 2012, the application date.

(Tr. 8-22).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The

Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can claimant perform past relevant work?

5. Can claimant do any other work considering his RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff asserts the ALJ failed to properly weigh the opinion of Dr. Harrington and, thus, the ALJ's RFC determination is not supported by substantial evidence. He argues that had the RFC been properly based on the opinion of treating physician Dr. Harrington, Medical-Vocational Guideline 201.12 would have rendered him disabled. For the following reasons, the undersigned finds the ALJ's analysis of the medical opinions and his RFC determination are supported by substantial evidence.

9

## RFC DETERMINATION

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* § 416.929. An ALJ must also consider and weigh medical opinions. *Id.* § 416.927.

Treating Physician Rule

Plaintiff argues the ALJ erred when he assigned "little weight" to the opinion of treating physician, Dr. Harrington, rather than "great" or "controlling" weight. (Doc. 15, 10-13).

Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242; *see* 20 C.F.R. § 416.927(c)(2).

A treating physician's opinion is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). The requirement to give controlling weight to a treating source is presumptive; if the ALJ decides not to do so, he must provide evidentiary support for such a finding and provide "good reasons" for the weight given to the opinion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers*, 486 F.3d at 242.

Good reasons are "'sufficiently specific to make clear to any subsequent reviewers the

10

weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). When determining weight and articulating good reasons, the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). "These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source." *Id.* This requirement helps a claimant understand the disposition of his case. *Wilson*, 378 F.3d at 544.

An ALJ's reasoning concerning a treating physician's opinion weight may be brief, but a single statement asserting inconsistency, without more, is not sufficient to make clear the reasons why the treating physician is accorded little weight. *See Allen v. Comm'r of Soc. Sec.,* 561 F.3d 646, 651 (6th Cir. 2009); *Friend v. Comm'r of Soc. Sec.* 375 F. App'x 543, 551-52 (6th Cir. 2010). However, while an ALJ is required to delineate good reasons, he is not required to enter into an "exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011).

Here, Dr. Harrington is presumptively a treating physician because no party asserts otherwise and it appears from the record he regularly treated Plaintiff. The ALJ assigned the opinion of Dr. Harrington less than controlling weight; therefore, the issue is whether he provided sufficient good reasons for doing so. In his decision, the ALJ concluded the opinion warranted little weight because it was not consistent with the record or Dr. Harrington's own treatment notes. (Tr. 18). Prior to making this determination, he sufficiently assessed the entire record, including treatment records from Dr. Harrington. (Tr. 15-19). The ALJ cited to frequent

unremarkable physical exams and conservative treatment, to which Plaintiff was agreeable—as he did not wish to seek surgical options. (Tr. 16-18). Other than one x-ray, the record, including Dr. Harrington's records do not appear to support the extreme physical limitations in his RFC determination.

If Dr. Harrington's extreme limitations were based on Plaintiff's subjective complaints, the ALJ noted inconsistencies between his testimony and the record, rendering him "not entirely credible". (Tr. 16-18). *See Lunsford v. Astrue*, 2012 U.S. Dist. LEXIS 52792, *13-14 (S.D. Ohio), *adopted by Lunsford v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 87690 (finding that "if an ALJ finds…subjective reports to be unworthy of complete belief, any medical opinion based on such complaints may be also be discounted.").

Here, Plaintiff testified conservative treatment was unsuccessful, leaving him unable to work due to back pain, but the record reveals at times he was improving and more active due to effective pain management—even "working on raising and showing pit bulls" during the relevant period. (Tr. 35, 281-82, 430). Further, both Dr. Harrington and Dr. Belding continued conservative treatment options. (Tr. 282, 309).

In September 2012, Plaintiff called Dr. Harrington's office and stated he was unable to leave a urine sample at that time because he was at work, but at the administrative hearing he stated he had not worked since 2002 or 2005. (Tr. 34-35, 415).

Additionally, Plaintiff presented to the emergency room for his knee, but a physical exam revealed a full range of motion in all extremities, equal 5/5 strength in his extremities, and an intact extensor function of both knees with no ligament laxity. (Tr. 448-49). He was treated with an ace bandage. (Tr. 449). Dr. Harrington was possibly aware of Plaintiff's alleged knee

problems (Tr. 302), as Plaintiff asserts (Doc. 15, at 12), but the record does not reveal any specific knee treatment.

An x-ray of the lumbar spine revealed advanced degenerative disease of the lumbar and lower thoracic spine (Tr. 277), and other evidence in the record supports Plaintiff's position, but even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. During his appointment with Dr. Belding, Plaintiff had no myelopathy, no radiculopathy, and a negative straight leg raise test. (Tr. 307-08). There was no need for a MRI because Plaintiff did not want to consider surgical options. (Tr. 282, 303). Dr. Harrington did eventually recommend a MRI, but there is no evidence one was ever performed. (Tr. 431).

At the hearing, Plaintiff's counsel presented the VE with an additional hypothetical situation involving an individual requiring the assistance of a cane and the VE opined this individual would be precluded from all work. (Tr. 57). However, substantial evidence supports the ALJ's decision to not consider Plaintiff's need for a cane because the record does not reveal any "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed". Social Security Ruling 96-9P. Dr. Harrington simply noted Plaintiff had been prescribed a cane. (Tr. 463). Without more, the ALJ properly concluded it was insufficient to establish the need for an ambulatory aid. (Tr. 17-18).

The ALJ directly cited and addressed Dr. Harrington's opinion and provided sufficient reasons for according it less than controlling weight. The ALJ relied on the factors of supportability of the opinion and consistency of the opinion with the record as a whole.

13

The ALJ also properly assigned great weight to the opinion of state agency reviewer, Dr. Torello. Plaintiff implies the ALJ should not have given this opinion great weight because it was authored over a year before the hearing was held. (Doc. 15, at 12). This argument is not well-taken because even so, Plaintiff fails to show that later medical evidence contradicts Dr. Torello's opinion. The period between Dr. Torello's October 2012 opinion and the October 2013 hearing date reveals an unremarkable physical examination (Tr. 430), Plaintiff's ability to raise and show dogs (Tr. 430), and an emergency room visit for his knee "giving out" which yielded a largely unremarkable physical exam and mild treatment (Tr. 448-49).

Medical-Vocational Guideline 201.12

Because the ALJ properly provided good reasons for the weight assigned to the treating physician's opinion and properly assessed the RFC based on the opinion of the state agency reviewer and the entire record, it is unnecessary to address whether the medical-vocational guidelines apply in this case.

CONCLUSION

Following a review of the arguments presented, the record, and the applicable law, the Court finds the ALJ's decision is supported by substantial evidence and resulted from application of the correct legal standards. The Court affirms the Commissioner's decision denying benefits.

IT IS SO ORDERED.

s/James R. Knepp, II
United States Magistrate Judge